# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### April 30, 2002 Session Heard at Jefferson City

## TIMOTHY LEE KENDRICK v. JUDY KENDRICK SHOEMAKE

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Chancery Court for Hamilton County**
**No. 69033     William M. Dender, Special Chancellor**

---

**No. E2000-01318-SC-R11-CV - Filed November 1, 2002**

---

ADOLPHO A. BIRCH, JR., J., concurring and dissenting.

Though I concur in the result reached by the Court, I am not comfortable with the analysis used to reach that result. In reviewing this custody modification dispute, the majority adopts an analysis that relies, initially, on a determination of whether a "material change in circumstances" has occurred since the prior custody order. Under this analysis, a change is material if it affects the child's "well-being" in a "meaningful" way. If there has been a material change, the court must then determine whether a change of custody is in the child's "best interests."

The "material change in circumstances" and the child's "best interests" analyses are fraught with danger because neither the terms nor the criteria used to construe them have fixed meanings. Consequently, in my view, this analysis is unworkable in several respects. First, by not providing a definition of what constitutes a "material change," this Court allows trial courts to rely on factors that are irrelevant to the existence of a significant threat of substantial harm to the child. Thus, every debatable decision made by the custodial parent about employment, education, medical care or social welfare is open to scrutiny as potential evidence that the decision has had a "meaningful" effect on the child's "well-being." This exposure to myriad areas of attack suggests the second problem with the unclear definition of "material change": the subjection of custodians to continued judicial scrutiny and oversight of the child's "well-being."

Third, once the court determines that a "material change" has occurred, it must move to the inherently unfair "best interests" analysis. The loose definitional structure of the "best interests" analysis ultimately favors the socioeconomically advantaged parent because the parent who can provide more opportunities for the child is often viewed as better suited to "provide" for the child. Thus, the amorphous "best interests" analysis encourages competition between parents to demonstrate which parent can do more for the child–a contest in which the sincere custodial parent with adequate parenting skills but inferior financial means, will always lose.

In my view, a change of custody must be based upon a demonstration that the child's circumstances are in danger of deterioration or have deteriorated because of the parent's conduct, thereby exposing the child to a substantial danger of harm.  This is a standard that excludes attacks on reasonable, albeit arguable, parental decisions and limitations that, inevitably, will sometimes negatively affect a child's "well-being" and focuses the inquiry on whether there is just cause to change custody.  This is also a standard that protects rather than abandons the established principle of promoting an end to otherwise never-ending custody disputes, provides stability in a child's placement, and keeps the courts out of ordinary family dynamics.

I cannot concur with an analysis under which the modification of custody between parents is allowed when the child is not exposed to a potential harm, and when the obvious distinguishing factor of the successful movant's evidence is access to greater financial means.  Therefore, I respectfully dissent in the manner and to the extent stated above.

_____
ADOLPHO A. BIRCH, JR., JUSTICE